MISSISSIPPI COOPERATIVE COTTON ASS'N v. WALKER.

(Division B. Nov. 27, 1939.)

[192 So. 303. No. 33899.]

**Butler & Snow**, of Jackson, for appellant.

Frank **T. Williams** and **Edwards & Edwards,** all of Mendenhall, and **James W. Strong,** of Jackson, for appellee.

874

**McGowen, J.,** delivered the opinion of the court.

Willie Lee Walker, appellee and assignee of Lillie Walker, brought an action at law against the Mississippi Cooperative Cotton Association, appellant, for $593.35, which is alleged to be the value of 5,405 pounds of lint cotton raised by Lillie Walker in the year 1935, and which it is alleged that C. C. Neely had wrongfully converted and sold to the appellant on or about the 11th day of October, 1935, without her knowledge and consent. An assignment in writing by Lillie Walker to Willie Lee Walker was made a part of the declaration. The appellant plead the general issue and gave notice of an estoppel by a special plea.

The court below gave a peremptory instruction directing the jury to find for the plaintiff 2,715 pounds of cotton at the value of 10.95 cents per pound, deducting therefrom 5¢ per pound on 305 pounds, chargeable as a process tax, with 6% interest on the balance from October 11, 1935. This was the amount of cotton and value that the appellant, through counsel, admitted it had purchased from C. C. Neely and which was a part of the crop raised by Lillie Walker.

From this judgment, the Mississippi Cooperative Cotton Association appeals here.

In 1935, Lillie Walker, a Negress, rented a place south of Magee of C. C. Nelly, a white man, and agreed to pay him 1,500 pounds of lint cotton as rental. When the cotton was gathered, at least two bales of this cotton was hauled to the gin by Lillie Walker, the tenant. C. C. Neely employed and directed one Fairchild, who operated a truck, to haul Lillie Walker's cotton to a gin at Magee. Fairchild testified that he hauled eight or ten bales of Lillie Walker's cotton. Lillie testified that she raised and ginned that season eleven or twelve bales of cotton. After the cotton was ginned, Fairchild hauled it to the place of Neely, under the landlord's direction. When the cotton was thus hauled, after ginning, Fair-

child testified that Lillie wanted her rights, and she testified that she protested but aided in hauling the cotton to the place designated by Neely because he ordered her so to do.

On the night of the day of the delivery of this cotton, Lillie Walker testified that Neely came to her house and got the gin tickets from her. She described the tickets as ''that little thing you tear off.'' She delivered the gin tickets to him on his promise that she might come to town the following day, take samples of the cotton and sell to one Mr. Mangum if they could. In pursuance of this, when she went to town, she could not find the cotton. The landlord told her it was at the depot. She did not find it there. She called on him frequently to settle for her cotton. She said she never obtained a settlement. She testified further that she had traded very little on credit with Neely that year. It might have been as much as $50. The record discloses that on October 11, 1935, Neely sold to the Mississippi Cooperative Cotton Association fifteen bales of cotton, and on the next day two bales of cotton, which was shipped by rail to Hattiesburg. One bale of cotton raised by Lillie weighed 305 pounds, was in excess of the Government allotment, and was therefore subject to a processing tax of 5 cents per pound, or $15.25. Lillie specifically denied that she had ever given Neely any authority to sell the cotton, and this is not controverted except it be by the fact that the gin owner issued some of the tickets in the name of Neely and Lillie Walker, and that he, as detailed, took charge of the cotton.

(1) It is insisted there was sufficient evidence to take the case to the jury, that Lillie Walker, under all of the circumstances of this case, invested C. C. Neely with the possession and indicia of ownership of the cotton; and (2) that there was evidence of a settlement between Lillie Walker and Neely on which the appellant was entitled to go to the jury.

We are of opinion that the peremptory instruction

granted in this case was properly given. This amount of cotton was clearly shown to have been sold by Neely to appellant without Lillie's knowledge and consent, and she was protesting, situated as she was, against the landlord's usurpation of her rights as the owner of the cotton, his refusal to tell her where it was, and obtaining the gin tickets (which were no evidence of title) on his promise that she could take the samples and sell the cotton.

On the proposition that the case should have gone to the jury on the ground that there was a settlement between Lillie and Neely (Neely having died before the trial or the institution of the suit), Mrs. Neely, wife of C. C. Neely, testified that they had a settlement between them in the office in the back of the store; but, a full examination of her testimony discloses that she knew nothing of what was said between the two in the office in conversation as she was not present. She also testified that he kept no books but made out sales tickets, and when a customer paid, he delivered the tickets to the customer. She had not seen any sales tickets against Lillie since that day. She did not state in her testimony when she last saw the sales tickets showing Lillie's account before this alleged conversation. At that time, she testified that Neely made out a charge ticket against Lillie for 98¢. This was not substantial proof on which to base a verdict of the jury. Lillie denied she had made any settlement with Neely or that she owed him.

On the next question, there was testimony tending to show that some supplies and money had been advanced during the year by the landlord to the tenant. Neely paid the gin bill, and Lillie owed an account incurred during the year, all of which is so indefinite (except as to the gin charges) as to be of little probative value.

The contention is that Lillie Walker and Neely each had a limited interest in the cotton, for which suit was brought. The court finally excluded all of the evidence as to these claimed items of advances by the landlord, and upon that premise, the appellant bases an argument

that it did not have to plead affirmatively these items as tending to show the landlord's interest in the cotton as a reduction of the amount of judgment to be rendered against it, and that this evidence was competent under the general issue.

Neely was landlord. Lillie was a tenant. The landlord is given a lien for rent and supplies by Section 2186, Code of 1930. Lillie was to pay her rent in cotton. There is no contention in this case that she had not paid the rent to the landlord. In this situation, the landlord has only a lien for such supplies as had not been paid for at the time the cotton was converted by him. Granting that by the purchase of the cotton, without knowledge by appellant of Lillie's right, the lien held by the landlord for supplies was conferred upon it. It was invested with no more right than Neely had. Lillie Walker had title to the cotton. Neely had a lien thereon for any supplies which he may have advanced and which had not been paid for when he, Neely, sold the cotton. He had no title. Therefore, the contention that the landlord had a limited interest therein must fall to the ground.

No plea or notice of any kind was given by the appellant that it claimed anything as set-off or as a payment on the cotton by way of supplies advanced. The proof offered made no attempt to state an account between Neely and Lillie, and if it established unpaid items of account against Lillie for supplies, was objected to on the ground that no plea or notice had been filed by the appellant of such a claim. The action of the court was proper. The evidence of partial payment or set-off was affirmative matter under our rules of pleading, and the court properly sustained the objection thereto. It appears to us that it is pretty clear from the evidence in this case that at the time the cotton was converted by Neely and sold to appellant that the recovery in this case, accepted by the appellee, was but a part of her entire cotton crop so far as Neely was concerned. It is probable that if the case had gone to the jury that the verdict of the jury would have

been greater than the amount awarded under the court's instruction.

By the verdict, she was awarded the value of only six bales, and it is certain that Neely, without right or title, sold that much cotton to appellant. He commingled her cotton with other cotton shipped and sold the commingled lot of cotton to appellant.

Affirmed.